RECORD NO. 10-4486

In The

# United States Court Of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## WILLIAM RAY WOOTEN,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE**

———————

**BRIEF OF APPELLANT**

———————

Claire J. Rauscher
Executive Director
FEDERAL DEFENDERS OF
  WESTERN NORTH CAROLINA, INC.

| | |
|---|---|
| **\*Ann L. Hester** | **Fredilyn Sison** |
| **Cecilia Oseguera** | **Assistant Federal Defender** |
| **Assistant Federal Defenders** | **One Page Avenue** |
| **129 West Trade Street** | **Suite 210** |
| **Suite 300** | **Asheville, NC 28801** |
| **Charlotte, NC 28202** | **(828) 232-9992** |
| **(704) 374-0720** | |

*Counsel for Appellant*                           *Counsel for Appellant*
*\*Counsel of Record*

# **TABLE OF CONTENTS**

**Page:**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      Did the district court erroneously exclude evidence of witness Mark
      Bradley's prior convictions under Rule 609(b)? . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     I.     PRETRIAL MOTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     II.    TRIAL EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     III.   THE SENTENCING HEARING . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      The district court erroneously excluded evidence of witness Mark
      Bradley's prior convictions under Rule 609(b). . . . . . . . . . . . . . . . . . . . 13

           A.    The Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

           B.    The District Erroneously Interpreted Rule 609(b) When
                it Refused to Permit Wooten to Cross-examine Bradley
                about His Prior Convictions That Were More than 10
                Years Old. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

i

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

ii

# TABLE OF AUTHORITIES

Page:

**Cases:**

*Green v. Bock Laundry Machine Company*,
490 U.S. 504 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Beahm*,
664 F.2d 414 (4th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*United States v. Cavender*,
578 F.2d 528 (4th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*United States v. Ebersole*,
411 F.3d 517 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Ham*,
998 F.2d 1247 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Leftenant*,
341 F.3d 338 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Moore*,
27 F.3d 969 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Prince-Oyibo*,
320 F.3d 494 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Thomas*,
914 F.2d 139 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

**Statutes:**

18 U.S.C. § 922 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 922(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

iii

18 U.S.C. § 922(g)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 924 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 924(c)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 924(c)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2113 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2113(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2113(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2113(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3742(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Rules:**

Fed. R. Evid. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Evid. 609 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

Fed. R. Evid. 609(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Evid. 609(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Sentencing Guideline:**

USSG § 4B1.41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Other:**

Advisory Committee's Note, 51 F.R.D. 315 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATEMENT OF JURISDICTION

The United States District Court for the Western District of North Carolina had jurisdiction over this case under 18 U.S.C. § 3231 and 18 U.S.C. §§ 922, 924, and 2113. The district court entered its written judgment on April 29, 2010. JA 581. Wooten timely filed notice of appeal on April 30, 2010. JA 588. This Court has jurisdiction over Wooten's appeal under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

**Did the district court erroneously exclude evidence of witness Mark Bradley's prior convictions under Rule 609(b)?**

## STATEMENT OF THE CASE

On December 18, 2008, the United States charged William Ray Wooten by Criminal Complaint with armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) & (d). JA 9. The Grand Jury returned an indictment on January 23, 2009, charging Wooten with four offenses: (1) armed bank robbery and forcing a person to accompany him, in violation of 18 U.S.C. § 2113(a), (d), and (e); (2) using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) and (B); (3) possessing a firearm and ammunition after having been previously convicted of a crime punishable by imprisonment for more than one year, in violation of 18 U.S.C. § 922(g)(1); and

1

(4) possessing a firearm and ammunition while being a fugitive from justice, in violation of 18 U.S.C. § 922(g)(2).  JA 14-15.

On June 15, 16, and 17, 2009, Wooten was tried before a jury.  JA 5-6.  The Court granted the government's motion to dismiss Count Four.  JA 6.  The jury found Wooten guilty of Counts One, Two, and Three, and also found that Wooten forced a person to accompany him in committing the bank robbery.  JA 570.

On February 19, 2010, the district court sentenced Wooten to 188 months' imprisonment on Counts One and Three, to run concurrently with each other, and to 300 months' imprisonment on Count Two, to run consecutively to the sentences in Counts One and Three, for a total sentence of 488 months' imprisonment.  JA 576.  The district court entered its written judgment on April 29, 2010, and Wooten filed notice of appeal on April 30, 2010.  JA 581-589.

## STATEMENT OF THE FACTS

### I.    PRETRIAL MOTIONS

Before trial, Wooten filed a motion seeking to use two prior convictions to impeach a government witness, Mark Henry Bradley.  JA 36-37.  While acknowledging that these convictions were more than 10 years old, Wooten argued that under Rule 609(b), the court could permit introduction of this evidence

2

because the probative value of the convictions substantially outweighed their prejudicial effect. JA 36. The district court denied Wooten's motion. JA 65-67.

## II.    TRIAL EVIDENCE

On December 9, 2010, Linda Wright, the manager of a Bank of America branch in Gastonia, North Carolina, opened the branch office at 9 a.m. JA 209. Several people were waiting to come in, including a man carrying a briefcase. *Id.* He appeared to be in his mid- to late-fifties and had a scraggly beard, glasses, and hair parted in the middle. JA 209-10. He did not have a cane or an inhaler with him. JA 237. He told her that he wanted to open bank accounts and a safe deposit box, and she took him to her office and sat down with him. JA 210.

The man said he was a Nations Bank customer, although the bank had changed its name to Bank of America in the year 2000. JA 211. After Wright began asking him questions about what kind of accounts he needed, he picked up his briefcase, opened it, put his hand in it, and told her that he had a sawed off shotgun and would kill her if she didn't follow his instructions. JA 213. Wright identified Wooten as the person who made these statements to her. JA 212. He asked her if she had a car, and she said yes; he told her she was going to need to go with him. *Id.* He told her to get her car keys, and she did. JA 214. Then she went with him to the bank lobby. *Id.*

3

In the lobby, the man walked to the teller line, opened the briefcase, put gloves on, and took the gun out. JA 214. He then announced that he was robbing the bank and threatened to kill Wright if the employees used any dye packs or pulled alarms. JA 215. All of the money would not fit into the briefcase, so he stuffed some of the money into his pockets; he could not close the briefcase. JA 217.

He then told Wright, "let's go," and he and Wright walked out of the bank and down the sidewalk. JA 217. She gave him the car keys and stopped walking. JA 218. He had difficulty getting into the car, and she had to tell him how to start it, because it had a push-button ignition. *Id.* When he started the car, she began backing up, and she ran back into the building as soon as he backed out of the parking space. *Id.*

Wright testified about another robbery she had witnessed at the same branch bank on October 8, 1990. JA 219. She was working as the manager at that time as well. *Id.* Wright explained that the robber in that case had gone into the office of a personal banker, Sharon, and that the series of events in that robbery were similar to what happened to Wright in this robbery. JA 220. However, the robber in that case took Sharon in her car when he fled the scene. JA 240. Wright testified that during the December 2008 robbery, she knew that the robber was the

4

same person who had robbed the bank in 1990 when he asked her if she had a car and told her she would need to go with him.  JA 242.

After Wright described the December 9 robbery, the government offered into evidence a security video which Wright testified was a fair and accurate depiction of what happened that day.  JA 223.  Wright also testified that the money kept by her Bank of America branch is insured by the FDIC.  JA 207.  Over Wooten's objection, the court admitted Exhibit 15, a certification showing that Bank of America is federally insured through the Federal Deposit Insurance Corporation.  JA 208.

Wooten's daughter, Tammy Wooten, testified that an FBI agent spoke with her on December 9, 2008, and showed her a photograph which she identified as her father.  JA 251.  The photograph was a copy of a still photograph taken from the bank's surveillance camera during the robbery.  JA 403.

Chris Wooten, Wooten's son, testified that he saw his father on November 16, 2008, at his aunt's house in South Carolina, shortly after his father was released from prison.  JA 288-89.  Like the robber described by Wright, Chris has long hair, facial hair, and wears glasses.  JA 332.  Chris admitted that he had convictions from 1996 and 2000 for filing a false police report and for worthless checks.  JA 294.

5

On November 24, Chris Wooten picked his father up at a motel in Charlotte and drove him to Asheville. JA 292. In Asheville, Wooten made a car payment on Chris' wife's car and gave Chris some cash, which Chris used to rent a motel room for Wooten. *Id.* Wooten could not rent a motel room for himself, because he had no identification. JA 293. The day after Thanksgiving, Chris took Wooten to look for a car and purchased a van for $1,000 with Wooten's money, putting it in Chris' name. JA 295, 324. On November 29, Chris and Wooten went to a pawn shop in Asheville, where Chris bought a single-shot shotgun. JA 298. Chris kept the gun in the van, because his wife does not like guns. JA 299. Chris testified that his father had about $3,000 in a bank account when he got out of prison. JA 317.

Chris Wooten testified that on December 7, 2008, he called Mark Bradley, his cousin, because Wooten wanted him to ask Bradley to drive him out west somewhere. JA 301. Wooten wanted Bradley to rent a place for Wooten to live. JA 302. On December 8, Chris took Wooten to Bradley's house to go over the details about leaving. JA 303. That night, Wooten told Chris that if he did not hear from Wooten by noon the next day, he needed to come get the van at a Food Lion in Gastonia. JA 304.

6

Chris claimed that he was in bed on the morning of December 9. JA 327. According to Chris, Wooten called him a little before noon on December 9 and asked Chris to meet him at a McDonald's. JA 305. Wooten was carrying a black briefcase that day and gave Chris $1,000. JA 306, 309. When they got to Bradley's house that day, Wooten and Bradley got into the van and left. JA 309. Both Chris and Bradley had financial problems at the time; Chris and his wife were about to lose their car, and Bradley had been evicted and had moved in with his daughter. JA 315, 326.

Chris admitted going to the home of Tony Clawges, a friend, on December 9, but he denied asking Clawges to hold some money for him. JA 331. But Clawges testified that on December 9, Chris Wooten came over with his wife at about 6:30 or 7:00 and had a plastic trash bag full of loose money. JA 467. Chris asked Clawges to store the money for him, and Clawges said no. JA 468. Chris left the money with Clawges anyway, and Clawges "took it and . . . tossed it." JA 471.

Angela Wooten, Chris' wife, also testified that she and Chris went to Clawges' house on December 9 and that Chris took a bag with money in it to Clawges' house. JA 479. Chris and Clawges went into the bathroom at Clawges' house, and she assumed they were in there counting the money. JA 480. Clawges

7

hid the money in his ceiling, but later called Chris and said he was going to throw it out. JA 486. She and Chris later went out to look for the money, but they could not find it. *Id.* Angela Wooten told a Bank of America employee in Asheville about the bag of money the week before trial. JA 486-87. She was afraid to tell anyone about it before that, because she thought Chris would be angry with her. JA 490. Contrary to Chris' testimony that he was sleeping on the morning of December 9, she testified that Chris was working on the morning of December 9. JA 491.

After Clawges and Angela Wooten had testified, Chris admitted that he had been lying when he testified that he did not take money to Clawges' house. JA 497.

Mark Bradley, the nephew of William Wooten and the cousin of Chris Wooten, testified that Chris called him on December 7, 2008, and told him he knew a guy who wanted to go out West and would pay Bradley $2,500 to drive him to Arizona. JA 351. The next day, Bradley learned that the person he was to drive West was Wooten, whom Bradley knew as "Uncle Smokey." JA 353-55. Bradley and Wooten left the next day, December 9, at about 3:30. JA 355. Wooten gave him $2,500 when they left. JA 356. Bradley put $200 in his wallet

but put the rest back in the van. *Id.* Wooten also gave Bradley $1,500 to pay for gas for the trip. JA 357. Wooten was "real nice" during the trip. *Id.*

After Bradley had been driving for a long distance—through a night and a half or two nights—he stopped to rest. JA 358. When he woke up, Wooten was driving, and they were headed towards Colorado instead of towards Arizona. *Id.* When Wooten stopped, they were at a Motel 6 in Colorado, just off the interstate. JA 359.

Bradley rented a room and then, after taking a shower, told Wooten that he had to go out to call home and check on his grandchild, who had been injured while Bradley was on the trip. JA 360. Bradley called his fiancee to ask how his grandchild was doing, and Bradley's son-in-law told him to get away from Wooten and that Wooten had robbed a bank and had a gun. JA 362-63. Bradley then called 911. *Id.* He told the dispatcher where he was and where the van was, and three police cars arrived. JA 364. He gave the officers the room key and told them where Wooten was. *Id.*

Mark Stadterman, a police sergeant in Greenwood Village, Colorado, testified that he responded to Bradley's call and went to the Motel 6 where Wooten was staying. JA 124. He called the room, and Wooten answered the phone and came out of the room with his hands up as instructed. *Id.* Wooten was

9

ordered to the ground at gunpoint and handcuffed. *Id.* Wooten told them that the money was in the room and that the gun was in the van. *Id.* Wooten began complaining of shortness of breath and chest pain, so the officers called for medical personnel and had Wooten taken to the hospital. JA 125.

At the hospital, Wooten signed a consent to search the motel room and the van. JA 127. In the room, officers found a wallet with Wooten's Social Security card and some cash, as well as clothing, a black briefcase containing money and shotgun shells, and a black hooded jacket containing shotgun shells. JA 139. In the van, officers found a black trash bag containing a sawed-off shotgun and a shotgun shell. *Id.*

Jonathan Grusing, a special agent with the FBI in Denver, testified that he met with Wooten at the Sky Ridge Medical Facility on December 11, 2008. JA 165. Wooten was sleepy but alert and seemed interested in what he had to say. JA 166. Wooten told Grusing that he was the only one involved in the North Carolina bank robbery and it was the same bank he had robbed 18 years ago before he was sent to prison. JA 169. Wooten told him that last time, he used a pistol, but this time, he used a sawed-off shotgun. *Id.* He also described taking one of the bank employees outside and using her car to get away from the bank. JA 170.

10

The jury found Wooten guilty of Counts One, Two, and Three, and also found that Wooten had forced a person to accompany him in committing the bank robbery.  JA 570.

## III.    THE SENTENCING HEARING

Before sentencing, the probation officer submitted a final Presentence Investigation Report ("PSR") recommending, for Counts One and Three, a total offense level of 34 and a criminal history category of IV, based on enhancements for armed career criminals under USSG § 4B1.4, resulting in a Guidelines sentencing range of 262 to 327 months' imprisonment.  JA 602-03.  For Count Two, the PSR recommended the minimum term required by statute, a consecutive 25-year sentence.  JA 603, 612.

Wooten objected to the PSR's Guidelines calculations for Counts One and Three, arguing that proper application of the Guidelines resulted in a base offense level of 33 and a criminal history category of IV, giving a Guidelines sentencing range of 188 to 235 months' imprisonment.  JA 617.  The Government agreed with Wooten, and at sentencing, the district court modified the PSR to reflect an offense level of 33, a criminal history category of IV, and a sentencing range of 188 to 235 months, with a mandatory minimum sentence of 15 years under the armed career criminal statute.  JA 573.

11

Wooten asked for a sentence at the low end of the Guidelines range, pointing out that he was 60 years old and in ill health and that even with a low-end sentence, he would never get out of prison.  JA 574.  The government asked for a high-end sentence.  JA 576.  The court sentenced Wooten to 188 months' imprisonment on each of counts One and Three, to be served concurrently, and a consecutive term of 300 months on Count Two, for a total term of 488 months' imprisonment.  JA 576.

## SUMMARY OF ARGUMENT

In prohibiting Wooten from cross-examining Mark Bradley about his prior convictions for breaking and entering and for common-law robbery that were more than ten years old, the district court erroneously imposed a requirement that the prior convictions must include an element of dishonesty or deceit in order to be admissible.  Wooten gave specific reasons why the prior convictions were probative of Bradley's untruthfulness as a witness, and there was virtually no prejudicial effect from the admission of the evidence since Bradley was not a defendant.  The district court abused its discretion in excluding the evidence, and Wooten's conviction should be vacated.

## ARGUMENT

**The district court erroneously excluded evidence of witness Mark Bradley's prior convictions under Rule 609(b).**

### A.    The Standard of Review

This Court reviews a district court's evidentiary rulings for abuse of discretion. *United States v. Leftenant*, 341 F.3d 338, 342 (4th Cir. 2003). The district court abuses its discretion when it acts "'arbitrarily or irrationally.'" *United States v. Moore*, 27 F.3d 969, 974 (4th Cir. 1994) (quoting *United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993)). "By definition, a court 'abuses its discretion when it makes an error of law.'" *United States v. Ebersole*, 411 F.3d 517, 526-27 (4th Cir. 2005) (quoting *United States v. Prince-Oyibo*, 320 F.3d 494, 497 (4th Cir. 2003)).

### B.    The District Erroneously Interpreted Rule 609(b) When it Refused to Permit Wooten to Cross-examine Bradley about His Prior Convictions That Were More than 10 Years Old.

Before trial, Wooten filed a motion in limine and written notice of his intent to use evidence of witness Mark Bradley's two prior convictions for impeachment purposes. JA 36-37. Those convictions included a 1981 conviction of breaking and entering and larceny, where Bradley received a suspended sentence of three years' imprisonment, and a 1984 conviction of common law robbery, where Bradley received an active sentence of three years' imprisonment. *Id.* The district

13

court denied Wooten's motion, ruling that the prior convictions were not admissible, because they did "not include the necessary suspect traits like dishonesty or deceit." JA 66. Although the court considered Wooten's argument that Bradley's prior convictions shed light on his motive to lie, the court ultimately rejected that argument because "Bradley's convictions lack suspect characteristics like falsification or dishonest conduct which would directly bear on whether jurors [ought] to believe Bradley's testimony in this trial." JA 67.

Under Rule 609 of the Federal Rules of Evidence, for the purpose of attacking a witness' character for truthfulness, "evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted." Fed. R. Evid. 609(a). Contrary to the district court's ruling, "suspect traits like dishonesty or deceit" are not *necessary* for the admissibility of a prior conviction under Rule 609 even if it is more than ten years old. Instead, Rule 609 provides that prior offenses that include as an element an act of dishonesty or false statement by the witness are admissible regardless of their punishment. Fed. R. Evid. 609(a).

Whether or not the prior offense included an element of dishonesty or false statement, if more than ten years have elapsed since the witness was released from

14

confinement, evidence of the witness' prior conviction is still admissible if "the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). While it is true, as the Court stated in *United States v. Cavender*, that "the crimes which are generally spoken of" as satisfying the balancing test of Rule 609(b) are those which involve dishonest conduct or false representations, that is by no means a requirement. *See* 578 F.2d 528, 534 (4th Cir. 1978). For example, in *United States v. Thomas*, the Court of Appeals for the Eighth Circuit approved the admission for impeachment purposes of a witness' prior conviction for possession of heroin with intent to distribute, even though the conviction was more than ten years old. 914 F.2d 139, 142-43 (8th Cir. 1990). That conviction did not involve dishonest conduct or false representations, but it was still admissible under Rule 609(b).

This Court has held that convictions more than ten years old may be used for impeachment purposes under Rule 609(b) only in "'exceptional circumstances,'" and when such evidence is allowed, the party seeking to use the evidence must establish specific facts and circumstances supporting a finding that the probative value "substantially outweighs its prejudicial impact." *United States v. Beahm*, 664 F.2d 414, 417-18 (4th Cir. 1981) (quoting *Cavender*, 578 F.2d

15

528).  While *Beahm* and *Cavender* both reversed the district court's decisions to admit evidence of a witness's prior convictions that were more than 10 years old, the witness in both of those cases was the *defendant*.  That made the prejudicial impact of the district court's decision extreme.  But as the Supreme Court explained in *Green v. Bock Laundry Machine Company*, Congress' main concern in adopting Rule 609's limitations on the use of prior convictions for impeachment purposes was undue prejudice to defendants in criminal cases.  490 U.S. 504, 507, 510, 520-21, 522 (1989).

Here, Wooten—the criminal defendant—was the party seeking to use older convictions to impeach a government witness, so no prejudice would have resulted from admission of the evidence.  As the Court noted in *Green*, when Rule 609 was enacted, "[a]ny prejudice that convictions impeachment might cause witnesses other than the accused was deemed 'so minimal as scarcely to be a subject of comment.'"  *Id.* at 522 (quoting Advisory Committee's Note, 51 F.R.D. 315, 392).  The Advisory Committee explained that "[t]he most troublesome aspect of impeachment by evidence of conviction is presented when the witness is himself the accused in a criminal case."  51 F.R.D. at 392; *see also Thomas*, 914 F.2d at 143 (district court's admission of prior conviction under Rule 609(b) upheld

where the court had "found that the risk of unfair prejudice was minimal because [the witness] was not the defendant").

Furthermore, Wooten gave specific reasons why Bradley's prior convictions were probative of his truthfulness in this case. Wooten argued that Bradley was a potential suspect in the robbery for which Wooten was charged. JA 37. He also pointed out that Bradley drove with Wooten to Colorado, rented a motel room, and had a large amount of cash, which could give rise to an inference that he was involved in the robbery. *Id.* The fact that Bradley had prior convictions for similar crimes demonstrated that having been convicted of similar crimes in the past, he would have known he was a suspect in this robbery and would be likely to lie about his own involvement in the offense in order to deflect blame from himself.

Bradley's prior convictions did tend to prove why he would be motivated to lie, and there was virtually no prejudicial effect from the admission of these prior convictions into evidence. The district court abused its discretion by excluding evidence of Bradley's prior convictions on the legally erroneous grounds that elements of dishonesty or fraud were necessary for them to be admissible. Under the correct interpretation of Rule 609(b), evidence of Bradley's prior convictions was admissible.

17

## CONCLUSION

For the reasons stated in this Brief, this Court should vacate Wooten's

convictions.

## REQUEST FOR ORAL ARGUMENT

Appellant Wooten respectfully requests that this Court grant oral argument.


This, the 6th day of October, 2010.

Claire J. Rauscher, Executive Director
Federal Defenders of
Western North Carolina, Inc.

| | /s Ann L. Hester |
|---|---|
| Fredilyn Sison | *Ann L. Hester |
| Assistant Federal Defender | Cecilia Oseguera |
| One Page Avenue, Suite 210 | Assistant Federal Defenders |
| Asheville, NC 28801 | 129 W. Trade Street, Suite 300 |
| (828) 232-9992 | Charlotte, NC 28202 |
| Counsel for Appellant | (704) 374-0720 |
| | Counsel for Appellant |
| | *Counsel of Record |

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
      32(a)(7)(B) because:

      this brief contains 3,950 words, excluding the parts of the brief
      exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
      32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
      because:

      this brief has been prepared in a proportionally spaced typeface using
      14 Point Times New Roman in WordPerfect 12.


                                              /s/ Ann L. Hester
                                           Counsel for Appellant
                                           Dated: October 6, 2010

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on October 6, 2010 I electronically filed the foregoing

brief with the Clerk of Court using the CM/ECF System, which will send notice of

such filing to the following registered CM/ECF user:

Mark A. Jones
OFFICE OF THE U.S. ATTORNEY
Carillon Building
227 West Trade Street
Suite 1700
Charlotte, NC 28202
(704) 344-6222

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

/s/ Carly Ann Ramey
Carly Ann Ramey
Gibson Moore Appellate Services, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219